421 F.2d 201
 STANDARD OIL COMPANY OF KENTUCKY, and C. H. Weathersby
(Defendants and Counterclaimants), Appellants,
v.
ILLINOIS CENTRAL RAILROAD COMPANY (Plaintiff and
Counter-Defendant), Appellee.
 No. 26334.
 United States Court of Appeals Fifth Circuit.
 Dec. 22, 1969.
 
 W. F. Goodman, Jr., Elizabeth W. Grayson, Forrest B. Jackson, Jackson, Miss., for appellants.
 Sherwood W. Wise, Richard B. Wilson, Wise, Carter & Child, Jackson, Miss., for appellee; Robert Mitten, J. W. Foster, Chicago, Ill., of counsel.
 Before GEWIN and GODBOLD, Circuit Judges, and CHOATE, District Judge.
 GODBOLD, Circuit Judge.
 
 
 1
 This is, hopefully, the last chapter in litigation arising from a railroad crossing collision in the town of Magnolia, Mississippi, between a train of Illinois Central (IC) and a truck-tank rig loaded with petroleum products and driven by Morris Pigott. The truck was owned by Weathersby, a bulk agent for Standard Oil. The tank and the petroleum materials carried in it were owned by Standard Oil. Eight persons, including Pigott, were killed and others injured in the collision and resulting explosions and fire.
 
 
 2
 Suits were filed in Mississippi state courts against IC, Standard and Weathersby, for the deaths of third parties Nelson and Gwin. Joint and several judgments were entered against the three defendants. In these state cases Pigott was considered to be the agent for Standard and Weathersby, and his agency for both is stipulated in the instant case. The two cases were appealed to, and affirmed by, the Mississippi Supreme Court[1] with a remittitur in each case.
 
 
 3
 The three defendants then entered into an agreement to pay the Nelson and Gwin judgments and to effect settlement of other and unlitigated third party claims. Each defendant advanced one-third of the aggregate payments, the total exceeding $500,000. The agreement between the defendants was not a settlement, and each reserved all rights against the other.
 
 
 4
 The estate of Pigott brought suit in Mississippi state court against IC and the estate of the train engineer, who also was killed in the accident, claiming damages of $250,000. The jury returned a $150,000 verdict against IC and found for the estate of the engineer. IC appealed. The Mississippi Supreme Court reversed and remanded for a new trial for errors in jury instructions not here material.[2] On remand a settlement of $70,000 was effected between IC, the Pigott estate, and-- because of workmen's compensation-- Weathersby and his compensation carrier. This was approved by the state trial court and the court in which the Pigott estate was administered. Releases of IC were executed by the Pigott estate, Weathersby and his workmen's compensation carrier, and the suit was dismissed with prejudice.
 
 
 5
 IC, Standard Oil and Weathersby then began to untangle the rights and liabilities between them. IC sued Standard and Weathersby, claiming property damage of approximately $150,000 and claiming two-thirds of the amount it had paid to the Pigott estate. Standard and Weathersby counterclaimed. They claimed that by reason of the Mississippi statute establishing contribution among tort feasors, Sec. 335.5, Mississippi Code 1942, Recompiled, they were entitled to contribution from IC of all amounts paid by them on the total third party claims in excess of one-half thereof. Also they sought damages for their property losses suffered in the accident.
 
 
 6
 The parties filed motions for summary judgment. The trial judge by a pre- trial order disposed of many issues.[3] He held IC was not entitled to recover anything for the settlement paid to the Pigott estate. He held the three parties liable equally for the amounts paid on the third party claims. He struck a defense of Standard and Weathersby, which asserted, on grounds of collateral estoppel and release, that IC's settlement with the Pigott estate barred any IC recovery against them for property damage. This left for trial IC's claim for property damage and the counterclaims of Standard and Weathersby for their property damage. At trial the jury returned a verdict for IC for $131,000 and found in favor of IC on the counterclaims of Standard and Weathersby.
 
 1. Contribution
 
 7
 The relevant Mississippi statute is as follows:
 
 
 8
 Sec. 335.5 Contribution between joint tort feasors.
 
 
 9
 In any action for damages where judgment is rendered against two (2) or more defendants, jointly and severally, as joint tort feasors, the defendants against whom such a judgment is rendered shall share equally the obligation imposed by such judgment, and if one (1) of such defendants pays an amount greater than the total sum of the judgment divided by the number of defendants against whom the judgment was rendered, then the other defendants shall be jointly and severally liable to him for the amount so paid in excess of his proportionate part; provided that no defendant shall be liable to any other defendant for more than his proportionate share of the original judgment.
 
 
 10
 Provided further, that in determining, for the purpose of the above contribution, the number of defendants against whom the judgment has been rendered, an employer and his employee, or a principal and his agent, shall be considered as one (1) defendant when the liability of such employer or principal has been caused by the wrongful or negligent act or commission of his employee or agent.
 
 
 11
 Provided further, that the liability of such defendants against whom such a judgment has been rendered shall be joint and several as to the plaintiff in whose favor such judgment has been rendered.
 
 
 12
 Prior to enactment of the statute there was no contribution between joint tort feasors in Mississippi.[4] The statute is in terms of 'judgments.' However, the parties agreed that amounts paid in settlement of claims not reduced to judgment were to be treated as if joint and several judgments had been entered against the three.
 
 
 13
 IC reads the second paragraph of the statute as requiring that (1) judgment has been rendered (2) against an employer and his employee or a principal and his agent (3) and the liability of the employer is derivative from the wrongful or negligent act or commission of his employee or agent. Thus, at the threshold, IC says that the master and servant (or principal and agent) must be joint judgment debtors and the liability of the master (or principal) derived from the liability of the servant (or agent) on principles of respondeat superior. And, since judgments were rendered against Standard and Weathersby but not against Pigott, who was the agent of Standard and Weathersby but was not a defendant, the proviso is not operative for any purpose in this instance.
 
 
 14
 Standard and Weathersby apply the second paragraph as follows. Weathersby is Standard's agent. Judgment was entered against principal and agent-- Standard and Weathersby-- and the liability of Standard as principal was caused by the wrongful act or commission of Weathersby, not done by Weathersby himself but by Pigott as his subagent. Thus the proviso is operative.[5] This, Standard and Weathersby say, is consistent with the general principle that the agent is responsible to the principal for the conduct of a subagent just as the agent is for his own conduct. ALI, Restatement of the Law, Second, Sec. 406. Having given the proviso a field of operation, the appellants then assert that when the legislature drafted a statute which departed from common law standards of no contribution between joint tort feasors it intended to incorporate therein all the equitable principles of contribution. They point out that in many situations equitable contribution is on a 'unit of wrong' basis so that the liability of several tort feasors who draw their respective derivative liability from a single source of wrongdoing is considered as a single unit in apportionment. E.g., 18 Am.Jur.2d, Contribution, Sec. 56, p. 83. Statutes of many states follow this approach. If that approach is applied here, the responsibility of Standard and Weathersby, wholly derivative and traceable to the single wrong of Pigott, would be for only one-half the damages.
 
 
 15
 The first paragraph of the statute creates a new Mississippi rule, that each defendant is to share equally. The second paragraph tells how to count the defendants who are to share. As we read the statute, the proviso in the second paragraph places a ceiling on the liability of a principal or employer so that he (or his insurer) is not exposed to the risk of contributing twice, once for his agent's wrong and once for his own responsibility imposed via respondeat superior. If the agent is not the subject of the judgment, the principal has no risk of paying twice, so the proviso is not applicable on this ground.
 
 
 16
 There is no legislative history to tell us whether the Mississippi legislature was adopting equitable contribution in toto or writing its own ideas of what the scope of the doctrine should be. Given no further guidance, we must follow the words of the statute. The proviso being inapplicable, the first paragraph requires that 'the defendants against whom such a judgment is rendered shall share equally the obligation imposed by such judgment.'
 
 
 17
 We conclude that the District Judge correctly held the three parties liable equally for amounts paid on the third party claims.[6]
 
 2. Effect of settlement of Pigott claim
 
 18
 The Pigott estate's suit for wrongful death resulted in a judgment for $150,000 against IC and a verdict in favor of the estate of the railroad engineer. After reversal by the Mississippi Supreme Court, settlement was made between IC, the Pigott estate, and Weathersby (and his workmens' compensation carrier) and ratified by the Mississippi trial court. The suit was then pending on remand, with the Pigott estate alleging negligence by the railroad and the IC denying negligence and affirmatively alleging negligence by Pigott.
 
 
 19
 Mississippi has a type of comparative negligence.[7] The settlement did not establish, conclusively or otherwise, that the negligence of IC far exceeded the negligence of Pigott so as to collaterally estop the railroad from collecting property damage from Standard and Weathersby, the privies of Pigott. The settlement was no more and no less than 'a non-litigated, court-approved compromise effectuated to avoid the risk of litigation,' and as such it did not serve as an estoppel by judgment on the parties or those in privity with them. Seaboard Air Line R.R. Co. v. George F. McCourt Trucking, Inc., 277 F.2d 593 (5th Cir. 1960). The reversed judgment for $150,000 may have called to IC's attention the risks of retrial and the lure of the safe harbor of settlement, but neither that judgment nor the settlement necessarily established any fact. The approval by the Mississippi courts established only that the settlement was fair and reasonable.
 
 
 20
 As an incident of settlement of the Pigott claim the Pigott estate released IC. Appellants seek to deduce therefrom a release by IC of its rights against Pigott, and as his privies they claim the benefit thereof. It is unclear whether appellants seek to vary the terms of the written release, or construe it by extrinsic circumstances without showing any ambiguity, or establish a separate release. Whatever the theory, it is unavailing. The release does not even purport to release Pigott from claims of the railroad. A letter written by the IC attorney to counsel for the estate says the railroad will make no claim against the estate. It does not say the IC releases anything. And the letter refers to the intention to proceed against Standard and Weathersby, against whom suit was then pending. The District Court, in reconsidering its order striking the defense of release, held:
 
 
 21
 There is simply nothing before this Court to even indicate from the entire proffer made, that the railroad expressly or impliedly, in writing or orally, absolutely and unconditionally released the Pigott estate from anything in connection with this accident. Even to agree that they had no intention of suing the estate therefor surely would not amount to a release or even a covenant not to sue.
 
 
 22
 The District Judge was correct in his conclusion that as a matter of law there was no release of the Pigott estate.
 
 
 23
 3. Compliance of the jury with instructions
 
 
 24
 The railroad alleged damages of $150,000 but proved up damages of $137,936.15. The appellants, under their counterclaims for property damages, proved damages of $6,673.06. The jury returned a verdict for IC for $131,000 and for IC on the cross-claims of Standard and Weathersby. The trial court had instructed the jury that as a matter of law all the parties-- IC, Standard and Weathersby-- were each guilty of negligence which proximately caused or contributed to the accident.[8]
 
 
 25
 The appellants filed a motion for new trial on the ground that the jury had failed to follow the court's instructions relating to the Mississippi comparative negligence statute, footnote 7, supra, and instead had simply deducted appellants' damages from the IC's damages, producing a difference of approximately $131,000, and returned a verdict for $131,000.
 
 
 26
 We are unable to say that the trial judge erred in denying the motion for new trial. The appellants do not say that the instructions on comparative negligence and the manner of calculating damages under the claims and counterclaims were incorrect. In fact, they acknowledge that the charge as a whole on these issues was correct. The reply brief of appellants says this, at p. 27:
 
 
 27
 Thus we believe that the court, taking all of the instructions together, told the jury that they must find for the plaintiff but must reduce the amount granted to the plaintiff by the proportion of the negligence attributable to it and that they must find for the two defendants and reduce the amount so found by the proportion of negligence attributable to these two defendants and then they could subtract the smaller recovery from the larger recovery and bring in a verdict for the balance in favor of the party having the larger claim.
 
 
 28
 The Court thus clearly made it mandatory upon the jury, by the instruction that both parties were negligent, to apportion the damages and reduce them in proportion to that party's negligence.
 
 
 29
 We, like the District Judge, are not able to say that the jury did not go through exactly the procedure which appellants accept as correct. In his order denying the motion the District Judge pointed out that the jury may have concluded with abundant support in the evidence that the negligence of Weathersby and Standard 'was almost the sole proximate cause of their own injury,' because their agent flagrantly violated two Mississippi statutes[9] by driving the large tank of high octane fuel on to and across the railroad without looking or listening. And, likewise, the jury may have concluded that the negligence of the railroad proximately contributed in only a small degree to its own injury.
 
 4. Correctness of jury charges
 
 30
 The appellants raise for the first time on appeal objections to the content of the instruction on last clear chance as a limitation on the right of IC to recover. No such objection was made known to the trial court as required by Fed.R.Civ.P. 51, and under the circumstances of this case we do not view the single phrase objected to as reversible plain error.
 
 
 31
 Objection was made to the following part of the charge:
 
 
 32
 The Court instructs the jury for the Illinois Central Railroad that Standard Oil Company and Weathersby were guilty of negligence proximately contributing to the collision, and, therefore, the Court instructs you that you must find for the Illinois Central Railroad Company; and this is true even though you also believe that the Illinois Central Railroad was itself guilty of some negligence proximately contributing to the collision.
 
 
 33
 Appellants excepted on the ground it was inconsistent with the charge on last clear chance and inconsistent with the form of the verdict. Taken in context, and considering the charge as a whole, we think the instruction was not reversible. Immediately following the quoted instruction the court gave exactly the same instruction for the benefit of appellants:
 
 
 34
 The Court instructs the jury for the Standard Oil Company and Weathersby that Illinois Central Railroad Company was guilty of negligence proximately contributing to the collision, and therefore, the Court instructs you that you must find for Standard Oil Company and Weathersby on their counterclaim, and this is true even if you also believe that Standard Oil Company and Weathersby were themselves guilty of some act of negligence proximately contributing to the injury.
 
 
 35
 The Court instructs the jury for Standard Oil and Weathersby that if you believe from a preponderance of the evidence in this action that the railroad company was negligent, as herein defined, and that its negligence proximately contributed to the collision, then you must find for Standard Oil and Weathersby on their counterclaim; and this is true even if you also believe that Standard Oil and Weathersby were themselves guilty of some negligence proximately contributing to the injury.
 
 
 36
 Much of the whole charge necessarily was directed to the issues raised by the interplay of the claims and counterclaims, the Mississippi comparative negligence doctrine, and the fact that all defendants were negligent as a matter of law. This particular instruction was a part of the effort to set out this complex interrelation in simple and orderly terms. If the jury had viewed it, as appellants urge, as a peremptory instruction to return a verdict for the IC without regard to the effect of its own negligence the jury almost surely would have viewed itself as also directed to return a verdict for Standard and Weathersby, which it did not do.
 
 
 37
 Affirmed.
 
 
 
 [1]
 Illinois Central Railroad Company v. Nelson, 245 Miss. 395, 146 So.2d 69, 148 So.2d 712, 4 A.L.R.3d 1217 (1962); Illinois Central R.R. Co. v. Gwin, 246 Miss. 67, 149 So.2d 340 (1963)
 
 
 [2]
 Illinois Central Railroad Company v. Pigott, 254 Miss. 429, 181 So.2d 144 (1965)
 
 
 [3]
 The disposition of the issues by a pre-trial order rather than summary judgment is not questioned by the parties
 
 
 [4]
 E.g., Klaas v. Continental Southern Lines, 225 Miss. 94, 82 So.2d 705 (1955)
 
 
 [5]
 This analysis ignores that Pigott is stipulated to be the agent of Standard as well as of Weathersby
 
 
 [6]
 In the Gwin case Standard and Weathersby contended they should bear one-half of the judgment and the IC the other half. IC contended for a division of one-third to each defendant. The Mississippi Supreme Court said:
 'Finally, the appellant railroad company contends that the damages also should be equally contributed by the railroad company, Standard Oil Company, and Weathersby. The judgment appealed from was against the said three defendants jointly and severally. The appellants Standard Oil Company and Weathersby contend that if there should be an affirmance, we should require the railroad company to pay one-half of the damage and these two defendants to pay the other half. No authority is cited which would justify our requiring any particular contribution by the defendants respectively in payment of the damages allowed. Since the judgment based on the verdict of the jury was against the said three defendants jointly and severally, we shall not undertake to change the liability thus imposed.'
 
 
 [149]
 So.2d 340, at 342. The Court made no reference to Sec. 335.05. All we understand the Court to have said is that, no authority being cited to show particular contribution, each defendant was liable to the plaintiffs for the entire judgment under common law principles of joint and several liability. These principles were not changed by Sec. 335.05. See the last paragraph of Sec. 335.05
 
 
 [7]
 Mississippi Code, 1942, Recompiled:
 Sec. 1454. Contributory negligence no bar to recovery of damages-- jury may diminish damages.
 In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property.
 
 
 [8]
 This was based on the fact that in Nelson and Gwin it had been judicially established that each party was guilty of some negligence which proximately contributed to the accident
 
 
 [9]
 Mississippi Code 1942, Recompiled, Secs. 7776 and 8211