Philip A. CYR, et al.

v.

Fernand M. CYR, et al.

Supreme Judicial Court of Maine.

Argued June 8, 1989.

Decided July 6, 1989.

Alan Harding (orally), Presque Isle, for plaintiffs.

Paul E. Macri, Jeffrey Rosenblatt (orally), and Berman, Simmons & Goldberg, Lewiston, for defendants.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

In *Butters v. Kane*, 347 A.2d 602 (Me.1975), we held that when one driver involved in a motor vehicle accident makes a payment to the other driver and obtains in return a general release of all claims, the express release by the releasor carries with it an implied release by the releasee. "[T]he making of a settlement without any express reservation of rights," we declared, "constitutes complete accord and satisfaction of all claims of immediate parties to the settlement arising out of the same accident." *Id.* at 604. That rationale is in no way peculiar to accident cases. Although this is the first time it has been urged upon us in any other context, we see no reason in logic or practice why the rule in *Butters v. Kane* is not equally applicable in this action arising out of the purchase and sale of a business.[1] Accordingly, we hold that the Superior Court (Aroostook County, *Violette, A.R.J.*) correctly applied the rule to grant summary judgment in favor of defendants Fernand and Rowena Cyr (the sellers) in an action for misrepresentation and breach of warranty brought by Philip and Esther Cyr (the buyers).

The sellers sold the Burger Boy restaurant in Caribou to the buyers on December 29, 1986. There was a 25% down payment, and the sellers financed the balance themselves by taking the buyers' promissory notes secured by a mortgage on the restaurant property. The buyers made payments on the notes until July of 1987, but then advised the sellers that they would make no further payments. They proposed to reconvey the property to the sellers in lieu

1. *Accord Sexton v. First Nat'l Mercantile Bank,* 713 S.W.2d 30, 31 (Mo.App.1986) ("Although [all cases in this jurisdiction], and most of the other cases discussing this type of estoppel, involve automobile collisions, no reason is advanced or known to us why this principle should not be applicable to a document settling debts, security interests, and other financial matters.").

of foreclosure. On December 30, 1987, in exchange for the buyers' reconveyance, the sellers unilaterally executed a comprehensive release of "all ... claims ... and demands whatsoever" the sellers might have against the buyers, including "without in any manner limiting the foregoing" any claims arising out of the mortgage and notes that the buyers had given the sellers to purchase the restaurant.

The buyers did not execute any express release of their claims against the sellers, and some seven months later, on August 4, 1988, they sued the sellers in a two-count complaint alleging that their 1986 purchase had been induced by the sellers' misrepresentations of the physical and financial condition of the restaurant and that the sellers had committed a breach of the warranty provisions of the purchase and sale contract. The sellers answered, raising several affirmative defenses including accord and satisfaction, and filed a motion for summary judgment, arguing that the buyers were bound by the *Butters v. Kane* principle even though only the sellers had executed an express release of any claims. The Superior Court agreed and this appeal followed.

The Iowa Supreme Court, in an analysis we found persuasive in deciding *Butters v. Kane*, expressed the rationale behind the rule as follows:

> [O]rdinary reasonable and reasoning [persons] occupying the position of the [releasors] at the time they accepted a settlement of their claim and executed the release and dismissal of their suit would think the entire matter was settled. [They] would not expect the [releasee] to pay [them] money in satisfaction of [their] claim and then sue [them] upon a cross-claim. No reason appears why the [releasee] should pay money to [them] when he felt *they* were actually indebted to *him*.

*Mensing v. Sturgeon*, 250 Iowa 918, 930, 97 N.W.2d 145, 151 (1959) (emphasis added), *cited in Butters v. Kane*, 347 A.2d at 604.

To be sure, there are circumstances in which parties with claims against one another might rationally choose to settle one that is relatively cut and dried while going forward with the litigation of a potentially offsetting but disputed claim. Thus, a general release may expressly reserve the releasee's right to proceed against the releasor. *See, e.g., Norton v. Benjamin*, 220 A.2d 248, 250 (Me.1966). But in the absence of any express reservation of rights, there is only one natural inference that can be drawn when one party has bargained for and accepted the other party's release of all claims arising from a specific transaction or occurrence: implicit in the bargain of accord and satisfaction is a reciprocal release, by the party who has procured the express release, of any claims inconsistent with the settlement effected by the release.

Undoubtedly, there will be cases involving circumstances presenting a dispute of material fact as to the scope of the implied discharge given by the releasee. This is not such a case. Here no factfinder could rationally conclude that the buyers, unconditionally reconveying the restaurant to the sellers, could have any reasonable belief that the sellers still owed them money damages for misrepresentation and breach of warranty. The buyers by their action implicitly released the sellers from those and any other claims related to the restaurant transaction by reconveying the property in exchange for a general release of all of the sellers' claims.

The interrelation of the parties' claims is emphasized by the buyers' ability to assert their claims as defenses to any suit by the sellers on the notes held by them. *See* 11 M.R.S.A. § 3–306(2) (1964). When the parties to a sale gone sour come to terms and the seller takes back the property in discharge of all his claims, any claim by the buyer that the property did not have the value warranted by the seller must be presumed to be reflected in the conditions under which the buyer turns back the property. Such reciprocal claims in a contract dispute are every bit as closely intertwined as are the mutual allegations in a motor vehicle accident dispute that each driver caused the other's injuries.

The entry is:

Judgment affirmed.

All concurring.