Harold and Idella EVERETT, a married couple; and Richard Everett, Plaintiffs,

v.

Robert Picardo PEREZ and Lucy Perez, individually and in their marital community; Kenneth C. Badgley and Earl F. Tilly, individually and in their official capacities; and City of Wenatchee, a municipality, Defendants.

No. CS–99–0258JLQ.

United States District Court, E.D. Washington.

Dec. 28, 1999.

Tyler K. Firkins, Robert C. Van Siclen, Van Siclen & Stocks, Auburn, WA, for Plaintiffs.

Lee V. Corkrum, Ogden Murphy Wallace, Seattle, WA, Patrick G. McMahon, Carlson Drewelow McMahon & Kottkamp, Wenatchee, WA, for Defendants.

MEMORANDUM ORDER AND OPINION DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTIONS TO STRIKE

QUACKENBUSH, Senior District Judge.

Before the court are Plaintiffs' motion for partial summary judgment (Ct.Rec.12) and motion to strike (Ct.Rec.33), as well as

Defendant City of Wenatchee's motion to strike (Ct.Rec.50) and associated motions regarding the briefing schedule (Ct. Recs.38, 47). The court held a hearing on these motions on December 21, 1999. Plaintiffs were represented by Tyler K. Firkins. Defendants City of Wenatchee, Kenneth Badgley, and Earl F. Tilley were represented by Patrick McMahon. Defendants Robert and Lucy Perez were represented by Lee Corkrum. At the hearing, the court announced its ruling. This memorandum order and opinion supplements the court's comments and documents the procedural matters discussed at the hearing.

## I. Relevant Facts

In order to consider the merits of Plaintiffs' motion for partial summary judgment, it is not necessary for this court to delve into the full background of this case. However, a brief description of the procedural history—which is undisputed—is necessary.

Plaintiffs are Harold and Idella Everett (hereinafter, "the Everetts") and their son, Richard Everett. In 1994, two of the Everetts' other children, Donna and Melinda, accused their parents of sexual abuse. These accusations were made during interrogations by Defendant Robert Perez, a police officer then employed by Defendant City of Wenatchee who was also the foster parent of both Donna and Melinda.

Donna and Melinda's allegations led to the incarceration of the Everetts and the placement of Richard with a Minnesota couple that has since adopted him. Idella, who has a limited mental capacity, entered an *Alford* guilty plea to the charges of sexual abuse in November 1994. Harold entered an *Alford* plea to similar charges in December 1994.

The Everetts appealed their convictions, alleging that they were innocent and that the case against them had been tainted by Defendant Perez's improper investigative techniques. According to the Everetts, new evidence had emerged which dictated the need to allow the Everetts to revoke their pleas and and to grant both of them a new trial. Most importantly, the Everetts produced an audio tape and a videotape in which Melinda recanted her allegations of sexual abuse and claimed that she had made the allegations in response to Perez's coercive interview techniques.

This evidence was raised in front of the Court of Appeals of the State of Washington via the Everetts' personal restraint petitions. On December 18, 1997, the Court of Appeals determined that it could not decide the merits of those petitions based on the record before it and ordered that the Superior Court for Chelan County conduct a reference hearing and make factual findings. According to the Superior Court, the Court of Appeals ordered it to answer the following questions:

1. Are the recantations of prior sworn statements by Melinda Everett, occurring on June 1 and June 2, 1996, reliable and believable, meaning that the original statements were perjured?

2. Were these recantations material; that is, will they probably change the outcome? This means that if the Defendants are allowed to withdraw their pleas of guilty, the probable result of a trial will be either a not guilty verdict or the lack of conviction.

3. Was there state misconduct in handling the case in the way of:

 a. Coercive and otherwise improper interview techniques used in the interrogation of witnesses; and

 b. Physically assaultive behavior in the role of foster parent by Detective Robert Perez. (Court's Memorandum Decision on Reference Hearing, Ct. Rec. 22, Ex. 6 at 3)

The reference hearing, which began on March 11, 1998, was held in front of Judge Wallis Friel and spanned the course of seven days. Twenty-four witnesses testified as to the facts of the criminal case. Judge Friel's resulting Memorandum Decision, issued March 31, 1998, was sixty-four pages long. Excerpts from the Mem-

orandum Decision are provided below to the extent necessary to analyze Plaintiffs' current motion.

After reviewing Judge Friel's opinion, the Washington State Court of Appeals granted each of the Everetts' petitions and remanded the cases to the Superior Court for withdrawal of the Everetts' guilty pleas. The State did not petition the Supreme Court of Washington to review this decision. The Everetts were released from jail. The prosecution did not pursue a new trial of the criminal charges.

On September 2, 1999, Plaintiffs filed this civil suit in the Superior Court of Chelan County alleging that Defendants, among other things, violated Plaintiffs' civil rights. Defendants removed the action to this court on September 20, 1999.

Plaintiffs have moved for partial summary judgment against Defendants Perez and City of Wenatchee on the basis of collateral estoppel. Plaintiffs request that this court adopt "the findings as fully set forth in both the trial court's memorandum decision and the Court of Appeal's Unpublished Opinion." (Ct. Rec. 16 at 4.)

Plaintiffs have also filed a motion to strike portions of affidavits filed by Defendants in response to the motion for partial summary judgment. Defendant City of Wenatchee has also filed a motion to strike certain documents which Plaintiffs submitted in support of the motion for partial summary judgment.

## II. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *See Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party is entitled to summary judgment when, view-

ing the evidence and the inferences arising therefrom in favor of the nonmoving party, there are no genuine issues of material fact in dispute, and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

## III. Application of Collateral Estoppel Doctrine

In determining whether collateral estoppel applies, this court looks to Washington state law on the matter. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.E.2d 262 (1982), the Court made it clear that the Full Faith and Credit Act, 28 U.S.C. § 1738, "does not allow federal courts to apply their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

 Washington law provides that collateral estoppel applies only when the party seeking estoppel can show that 1) the issues between the first action and the second are identical, 2) the parties to be estopped in the second action were parties in the first suit, or are in privity with parties in the first suit, 3) the first suit resulted in a final judgment on the merits, and 4) there would be no injustice if the parties were estopped from relitigating the issues. *See Nielson v. Spanaway General Medical Clinic, Inc.*, 135 Wash.2d 255, 262–63, 956 P.2d 312 (1998). All of these elements must exist before collateral estoppel may be entered. Defendants claim that none of them exist here.

The court notes, as a preliminary matter, that Plaintiffs seek the "offensive" application of collateral estoppel against defendants, *i.e.*, an application of estoppel that would bar a party from defending itself. While the Supreme Court has given courts broad discretion to apply offensive

estoppel, it recognized, in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 58 L.E.2d 552 (1979), that collateral estoppel is more likely to be unfair when the estopped party is a defendant. In particular, "it might be unfair to apply offensive estoppel ... where the second action affords the defendant procedural opportunities unavailable in the first action ...." *Id.* at 330–331, 99 S.Ct. 645.

Plaintiffs have not cited, and this court has not found, any Washington law using or authorizing offensive collateral estoppel, much less a case in which a criminal defendant was permitted to use the doctrine offensively in a civil matter. Although *Hanson v. City of Snohomish*, 121 Wash.2d 552, 561–64, 852 P.2d 295 (1993), recognized that criminal actions may give rise to collateral estoppel in civil proceedings, in that case the civil defendants (a city and its police officers) were allowed to *defensively* estop the civil plaintiff, who challenged police identification procedures even though a court had already found those procedures to be valid in the criminal action in which the civil plaintiff had been convicted. The procedural stance in this case is different; the former criminal defendant is seeking *offensive* estoppel against the civil defendants.

Plaintiffs claim that the Washington Supreme Court applied offensive estoppel in *Thompson v. State Dep't of Licensing*, 138 Wash.2d 783, 982 P.2d 601 (1999), but this court disagrees. *Thompson* was a classic case of the defensive use of collateral estoppel. Thompson was a truck driver who was indicted on charges of driving while intoxicated. He was simultaneously subject to proceedings by the Department of Licensing regarding the possible revocation of his license. *See id.* at 603–04. In the criminal trial, the court suppressed the blood alcohol concentration test results. *See id.* The Supreme Court held that Thompson could collaterally estop the Department of Licensing from considering those test results in the proceedings regarding his license. *See id.* at 610. The doctrine was not applied offensively in that case.

While the lack of Washington precedent using offensive collateral estoppel is not determinative here, it does demonstrate the difficulty that the Plaintiffs herein have in showing this court that it would be proper to estop Defendants Perez and City of Wenatchee from defending this lawsuit. The court should apply offensive collateral estoppel only when it is clear that all of the required elements have been met.

Plaintiffs have some difficulty proving each of those elements. However, the key issue in this case is whether the City of Wenatchee and Perez were in privity with the prosecution of the Everetts. Plaintiffs offer several different lines of argument that they claim lead to a conclusion that these Defendants were in privity, but none of them stand up to scrutiny. Each of these arguments regarding privity is addressed below. Since the court finds that privity does not exist, it does not find it necessary to address the other elements of the doctrine.

### 1. Agency Theory

Plaintiffs' first theory is roughly that because Chelan County, the State of Washington, the City of Wentachee, and Detective Perez are all either government agencies involved in law enforcement or employees of such an agency, they are all in privity with one another with regard to the criminal prosecution of the Everetts.

Plaintiffs can establish one link in this alleged chain—the State of Washington was a party to the criminal prosecution. In *Thompson*, 982 P.2d at 607, the court stated, with regard to the criminal action in that case, that "the prosecutor was the State of Washington in the person of a Clark County deputy prosecuting attorney." In this case, the State of Washington appeared in the person of a Chelan County prosecutor.

Plaintiffs have not shown, however, that the City of Wenatchee and Perez are in privity with the State or the prosecution. Plaintiffs have attempted to establish the requisite connection by analogizing to em-

ployer-employee and principal-agent relationships. The weight of this argument falls on *Kuhlman v. Thomas,* 78 Wash. App. 115, 897 P.2d 365 (1995), in which the plaintiff, who had unsuccessfully sued his former employer, filed suit on the same issue against his former co-workers. The court held that "the employer/employee relationship is sufficient to establish privity" and found that privity existed in that case because the liability of the employer in the first suit was "premised entirely on the actions of its employees." *Id.* at 121–22, 897 P.2d 365.

The relationship between the City of Wenatchee and Perez on the one hand and the State on the other is not analogous to an employer/employee or principal/agent relationship. The City of Wenatchee is not a division of the state government and Perez is not a state employee. Plaintiffs have not shown, nor have they attempted to show, that the State controlled the actions of either Wentachee or Perez in the manner required to create an agency relationship. *See, e.g., Moss v. Vadman,* 77 Wash.2d 396, 402, 463 P.2d 159 (1969) ("[A] prerequisite of an agency is control of the agent by the principal.") There was no principal/agent relationship that might give rise to privity.

■ Furthermore, Washington forbids the offensive use of collateral estoppel against an agent when the action serving as the basis for the estoppel involved the principal but not the agent. *See Ward v. Torjussen,* 52 Wash.App. 280, 283, 758 P.2d 1012 (1988). Since the State was a party to the previous case but Defendants were not, *Ward* would bar collateral estoppel here even if there were an agency relationship.

■ To the extent that Plaintiffs argue that the City of Wenatchee and Perez were the principals and the prosecutors were their agents, that argument is dispatched by the following section on the amount of control the City and Perez had over the criminal actions.

## 2. Control Over Case/Substantial Participation

Plaintiffs also contend that the City of Wenatchee and Perez are in privity with the prosecution because they controlled the criminal case against the Everetts. The Washington courts do find privity where "a person who is not a party ... controls or substantially participates in the control of the presentation on behalf of a party." *See Mutual of Enumclaw Ins. Co. v. State Farm Mutual Ins. Co.,* 37 Wash. App. 690, 682 P.2d 317 (1984), *quoting* Restatement (Second) of Judgments § 39 (1982). Plaintiffs' primary argument in this regard is that the City of Wenatchee and Perez were the sole source of the prosecution's evidence and participated in the arguing of the case, and, therefore, were in control of the prosecution. However, they have produced very little to support this argument.

Plaintiffs have produced two documents that show the City of Wenatchee was peripherally involved in the Superior Court reference hearing. One is a portion of the hearing transcript, in which the City of Wenatchee's counsel argued to the Superior Court that it should not admit Perez's personnel file into evidence. (Ct.Rec.31, Ex. F) The other is the court's ruling on the evidentiary issue, which was forwarded to several people, some of whom have a Wenatchee address. (Ct.Rec.31, Ex. K) This court cannot determine whether one or more of the addressees worked for the City of Wenatchee and/or Perez, as Plaintiffs apparently claim.

The City of Wenatchee, in its motion to strike, objects to the inclusion of these documents in the record, but the court finds that even these documents do not establish privity. Even if Plaintiffs had shown that the City of Wenatchee and Perez received a copy of the court's ruling regarding the admissibility of the personnel file, that fact would not raise a genuine issue of material fact indicating that they controlled or substantially participated in the prosecution of the Everetts. Both the

City and Perez had a strong interest in the decision on the admissibility the personnel file. The City understandably did not wish to have its confidential files divulged in open court, and Perez had the same interest, except that his interest was personal. But this interest, and the City of Wentachee's appearance to argue against admission, does not indicate that the City or Perez were in control of the criminal matter.

Nor would collateral estoppel be proper if the City of Wenatchee and Perez were the sole sources of evidence for the prosecution (and it is not at all clear that they were). Plaintiffs claim that Defendants' alleged control over evidence makes this case parallel to *Mutual of Enumclaw Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 37 Wash.App. 690, 682 P.2d 317 (1984), in which an insurance company filed suit over a particular issue when it had already litigated that issue on behalf of its insured, who was the named party in the first action. There was privity because the insurance company had absolute control of the insured's defense, using its own attorneys to litigate the case and make settlement offers on behalf of the insured. *See id.* at 691–93, 682 P.2d 317.

That level of control does not exist here. This case more closely resembles *Loveridge v. Fred Meyer, Inc.*, 125 Wash.2d 759, 887 P.2d 898 (1995), in which the plaintiff claimed her former employer had sexually harassed her. She filed a complaint with the EEOC, which in turn sued the employer, seeking an injunction against the type of harassment the plaintiff alleged but not seeking damages or reinstatement. The plaintiff filed her own action in state court seeking damages. *See id.* at 761–62, 887 P.2d 898. The EEOC suit ended in a consent decree and the employer moved for res judicata in the state suit. The court found there was no privity because, even though the plaintiff had triggered the EEOC action and provided the primary evidence for that suit, neither she nor her attorney had actually guided the EEOC action. *See id.* at 765, 887 P.2d 898. The court also found it determinative that the

plaintiff's interests in the state suit exceeded those addressed in the EEOC action. *See id.* at 768, 887 P.2d 898.

Thus, even if the City of Wenatchee and Perez were the sole source of all of the prosecution's evidence, there was no privity because they did not prosecute the Everetts. That task was given to the Chelan County prosecutors, who are neither police officers nor city employees. Plaintiffs have not shown any issues of fact which might indicate the City of Wenatchee or Perez had any effect on motions in limine, decisions about which witnesses and evidence to actually present, or any of the other key legal and strategic decisions that were undoubtedly made in regards to the reference hearing. Nor is there any indication that the City or Perez could have participated in such a capacity if they so desired. These Defendants did not control the criminal prosecutions or substantially participate in the reference hearing to the extent that the court could find them in privity with the prosecution.

### 3. Virtual Representation

Plaintiffs' final argument with regard to privity is that the City of Wenatchee and Perez were in privity with the prosecution because a City representative and Perez testified at the reference hearing, and both of them were interested in the outcome of the case against the Everetts. Plaintiffs contend that because Perez was the primary investigative officer in this and several other cases, and because he was a City employee, the City and Perez were so interested in the Everetts' conviction that they should be collaterally estopped from defending themselves in this court.

While it is well-established in Washington that, under the "virtual representation doctrine," a witness may in some circumstances be considered in privity with a party, this is not such a circumstance. In the recent case of *State v. Cloud*, 95 Wash. App. 606, 976 P.2d 649 (1999), a convicted murderer moved for a new trial, claiming that the attorney who represented him at

trial had not given him effective assistance. The trial court allowed the defendant's trial attorney to intervene in the hearing on the new trial motion, on the grounds that if he was not allowed to do so, he would be collaterally estopped from defending himself in a hypothetical malpractice action. *See id.* at 610–11, 614, 976 P.2d 649. In ruling that this intervention was improper, the court noted:

> [A] witness in a trial who is "fully acquainted with its character and object," and "interested in its results" may be collaterally estopped from bringing a later claim on the same issue. But Washington courts clearly hold that this doctrine may be used only where there is "some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene but presents no valid reason for doing so."

*Id.* at 654, *quoting Hackler v. Hackler,* 37 Wash.App. 791, 795, 683 P.2d 241, review denied, 102 Wash.2d 1021 (1984). The court then held that "[b]ecause no authority exists which allows [the attorney] to intervene in a criminal proceeding," he would not be collaterally estopped from defending himself in a civil suit, and therefore intervention was improper. *Id.*

Although *Cloud* is procedurally distinct from this case, it is nonetheless instructive. Like the *Cloud* attorney, Perez had a strong interest in the outcome of the reference hearing. Yet in both *Cloud* and the reference hearing, that interest was in not being declared so professionally incompetent that a guilty plea or conviction would be overturned as a result. No matter how much the City of Wenatchee and Perez might have wished to mount a legal defense of Perez's investigative practices at the reference hearing, they were simply not allowed to do so under Washington law. This court will not collaterally estop them from litigating the issues in this case when they did not have the opportunity to litigate them in the criminal matter.

Neither of the cases cited by Plaintiffs affect this conclusion. In *Hackler, supra,* 37 Wash.App. at 795–96, 683 P.2d 241, a witness was found in privity with a party in an action to quiet title because although he had an interest in the property, he chose not to assert it in the first action, deciding instead to file his own action once the first one did not turn out to his liking. In *Garcia v. Wilson,* 63 Wash.App. 516, 520–22, 820 P.2d 964 (1991), a passenger injured in an automobile accident testified in a suit brought by the driver but brought her own suit only after the driver lost his; she was found to be in privity with the driver.

As Plaintiffs indicate, the *Garcia* court did state that the "primary factor" in the "virtual representation doctrine" is whether "the nonparty in some way participated in the former adjudication, for instance as a witness." *Id.* at 521, 820 P.2d 964. However, it also held that "there *must* be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene." *Id.* (emphasis added). That is clearly not the case here, where neither the City of Wenatchee nor Perez could have intervened in the prosecution or reference hearing except to address specific evidentiary issues such as the potential disclosure of the personnel file.

The Defendants herein are not in privity with the prosecution. This court therefore cannot and will not apply collateral estoppel against them. In conclusion, this court notes that its holding is consistent with federal courts that have considered this same issue, albeit while applying law other than Washington's. In an strikingly similar case, the District of Utah considered whether collateral estoppel was proper in a civil suit against a police detective that was filed by a father who had previously pleaded guilty to sexually abusing his daughter. The father had been released because the state court of appeals remanded for a new trial in light of evidence that his confession

was the result of improper questioning by the detective. *See Griffin v. Strong,* 739 F.Supp. 1496, 1497–98 (D.Utah 1990). The court did not apply collateral estoppel because there was no privity. In doing so, the court noted, in a passage that is particularly apt here:

> The central purpose of Strong's [the police detective's] involvement in Griffin's criminal case was to help convict Griffin of his alleged crimes. Detective Strong has now become defendant Strong, and criminal defendant Griffin is now civil plaintiff Griffin. Not only are the interests at stake in this case very different for both parties, but the burden of proof and available defenses are also different in this, the second case.

*Id.* at 1502–03. *See also Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.), *cert. denied,* 404 U.S. 843, 92 S.Ct. 139, 30 L.Ed.2d 78 (1971) ("The defendants were city police officers not directly employed by the state; they had no control whatsoever over the criminal proceeding and no direct individual personal interest in its outcome."); *Duncan v. Clements,* 744 F.2d 48, 52 (8th Cir.1984) (The officer "had no control over the prosecutor and did not make decisions with regard to the prosecution. [His] role at the ... hearing was simply that of a witness for the prosecution.").

Plaintiffs have not demonstrated that the Defendants herein were parties in the criminal actions or in privity with the prosecution, which is a required element of collateral estoppel. Therefore Plaintiff's motion for partial summary judgment (Ct. Rec.12) is DENIED.

## IV. Motion to Strike

In support of the motion for partial summary judgment, Plaintiffs filed several documents as a part of a sworn affidavit. Defendant City of Wenatchee moved to strike these documents on the basis that they were not properly authenticated.

In support of Defendants' responses to the motion for partial summary judgment, Defendants' counsel submitted declarations which contain numerous assertions of fact. One such asserted fact is set forth in the declaration of Gary Riesen, the Chelan County prosecutor, in which Mr. Riesen states that Defendant Perez did not ask to testify at the reference hearing. Plaintiffs objected to this and other factual assertions and moved to strike large portions of these declarations.

As should be evident from the discussion above, the material that the parties seek to strike is not determinative. The court found, as noted above, that privity did not exist even when it considered the documents Plaintiffs submitted. The court also did not rely on Defendants' declarations in reaching its decision on the motion for partial summary judgment. The court therefore DENIES the motions to strike (Ct. Recs. 33 and 50) as moot.

## V. Procedural Matters

At the hearing, after announcing its ruling, the court proposed setting a trial date of July 9, 2001 and requested that the parties confer regarding dates for dispositive motions, motions in limine, pretrial conference, and so forth. The court ORDERS the parties to confer regarding those dates and report to the court no later than January 15, 2000. If the parties are unable to agree on a schedule, the court will hold a scheduling conference.

The court also raised the question of whether this memorandum order should be certified for an interlocutory appeal. The court hereby ORDERS Plaintiffs to submit comments regarding possible certification of this memorandum order no later than January 7, 2000. Defendants shall have ten calendar days to respond.

Plaintiffs also inquired of the court whether it might certify a question to the Washington Supreme Court regarding whether a police officer may be held liable for a negligent investigation. If Plaintiffs wish to request this court to certify a question to the Washington Supreme Court on that issue, they must submit a supporting memorandum to this court by January 7, 2000. Defendants shall have

ten calendar days to respond to any memorandum that the Plaintiffs submit.

Plaintiffs' counsel further requested clarification that, given the fact that trial is set for the summer of 2001, Plaintiffs would be allowed to supplement the witness list submitted on November 9, 1999. Plaintiffs submitted that witness list pursuant to this court's order when Plaintiffs were trying to secure a trial date for the summer of 2000. As trial is now set for a much later date, Plaintiffs will not be bound by the November 9, 1999 witness list and may supplement that list before the date on which final witness lists are due.

## VI. Conclusion

The court **ORDERS** as follows:

1. The motion for partial summary judgment (Ct.Rec.12) is DENIED.

2. The motions to strike (Ct. Recs. 33 and 50) are DENIED as moot.

3. The motions for shortening of time (Ct. Recs. 38 and 47) are DENIED as moot.

4. The parties shall confer regarding scheduling dates and report the results to this court no later than January 15, 2000.

5. Plaintiffs shall brief this court no later than January 7, 2000, on the issue of certification of this memorandum order and opinion for interlocutory appeal. Defendants shall have 10 calendar days to respond.

6. If Plaintiffs seek to have this court certify the issue of officer liability for negligent investigation, they must do so no later than January 7, 2000. Defendants shall have 10 calendar days to respond to any filing by Plaintiffs on this issue.

7. Plaintiffs shall not be bound by the witness list filed on November 9, 1999.

**IT IS SO ORDERED.** The Clerk is hereby directed to enter this Order and furnish copies to counsel.